OPINION OF THE COURT
Phyllis Gangel-Jacob, J.
As we enter the eighth month since the Child Support *881 Standards Act[1] (CSSA) became effective, we are given, almost daily, occasions for interpretation, application and fine tuning. Applications for pendente lite child support provide the most immediate opportunity to use the new law — as well as the responsibility to determine its applicability to a particular set of facts.
In this divorce action, the defendant mother moves for pendente lite child support. The parties have been married for approximately 15 years. There are four children of this marriage, ages 5, 8, 10 and 12. Mother and children now live in Beverly Hills, California.
The mother is 41 years old and is employed in California as a photo-editor. She earns approximately $28,600 per year. The father is 54 years old and is a self-employed attorney. His net worth statement sets forth 1989 gross earnings of $157,011 from employment and other sources. In addition, he had $40,000 in income from the final payment of a wrongful death award. Total gross income in 1989 was therefore $197,011.

The CSSA applies to all orders made after September 15, 1989

All orders for child support, entered after September 15, 1989, must be made pursuant to the Child Support Standards Act, which amended Domestic Relations Law § 236 (B) (7); § 240 and section 413 of the Family Court Act to provide a method by which courts are to determine the amount of child support.

The CSSA is applicable to orders for pendente lite relief

For several years, Domestic Relations Law § 236 (B) (7) has required the court to make an order for temporary child support without the need to show immediate or emergency need. The CSSA amended the provisions of Domestic Relations Law § 236 (B) (7) which address temporary child support to authorize the court to make its pendente lite awards pursuant to the methodology set forth in Domestic Relations Law § 240. This section was amplified by specifically requiring that an order for temporary support be made even under circumstances where full information as to income and assets of either or both parents may not be available. In that circumstance the use of the formula is not required. If, however, such information is available the court may use the statutory formula set forth in Domestic Relations Law § 240.
*882 Here, the father and mother have each submitted net worth statements. The mother claims an annual income in 1989 of $28,600, and the father claims an annual income of $157,011, exclusive of an additional $40,000 wrongful death recovery. After examining the submitted papers, I have determined that there is ample information in the record to allow me to use the method set out in Domestic Relations Law § 240 to arrive at an appropriate amount for pendente lite child support.

Using the CSSA

Following the guidelines set forth in section 240 of the Domestic Relations Law is like following a map which leads one safely through rocky terrain to the chosen destination. It may not be the only way to go; it may not be the accustomed path; it may not even be the easiest way, but it is a path designed to alert the traveler to the pitfalls along the way so that little is missed and all areas are explored.
Using the CSSA properly requires some work and a new way of thinking. It requires the use of a statutory formula, but allows the court to vary upward or downward the calculated amount by taking certain (enumerated) factors (for variation) into consideration when the statutory amount is unjust or inappropriate.
Domestic Relations Law §236 (B) (7) has, for a decade, set out the factors to be used in determining child support. Although never authorized in the past, it was common for the court to merely add up the costs attributable to the children and allocate them between the parents as a shorthand way of arriving at an amount. This method, to the extent it was ever acceptable, has met its demise. Any further use of this so-called "cost-allocation” approach would be in direct conflict with the CSSA, which does not attempt to provide merely for the "costs” of caring for a child, or even the "needs” of the child (unless there is special need shown), but is grounded on the principle that the parents’ income and standard of living should be shared by the child. Under the CSSA, the court is constrained to the extent possible, to provide that the child will have a standard of living appropriate to the income of both parents.
The "cost-allocation” method almost invariably relegated the child to the standard of living of the custodial parent alone. This has been eliminated by CSSA. This court will not, therefore, revert to the "cost-allocation” method, but will move on, guided by the Child Support Standards Act.

*883
Determination of income

Domestic Relations Law §240 (1-b) (c) instructs the court first to determine combined parental income from all sources. As noted above, the wife has an annual income of $28,600, while the husband’s recurring income is $157,011, for an annual combined gross parental income of $185,611.
Next, each parent is allowed certain specific deductions from income, which are listed at Domestic Relations Law § 240 (1-b) (b) (5) (vii). The only applicable deductions at this point are city taxes and FICA taxes actually paid. In 1989, the FICA tax rate was 7.51% of earnings. The maximum income subject to FICA was $48,000.[2] Applying these figures results in a reduction of $2,148 for the mother, leaving $26,452, and a reduction of $3,605 for the father, leaving him with $153,406. The Child Support Worksheets (Blumberg Form A189) submitted by the mother lists the father as having paid $4,325 in city taxes and the mother as having paid no city taxes. This would further reduce the father’s income to $149,081. Thus, the adjusted combined income is $175,553.

Combined income below $80,000/year

Next Domestic Relations Law § 240 (1-b) (c) requires that the court apply the appropriate percentage to the combined parental income up to $80,000. Since there are four children for whom support is sought, 31% is applicable. CSSA calls for 17% for one child, 25% for two children, 29% for three children, 31% for four children and no less than 35% for five or more children.
Applying the percentage (31%) to the combined income up to $80,000 results in a combined child support obligation of $24,800. This amount must then be prorated between the parents in accordance with the ratio each parent’s income bears to the combined income, and the noncustodial parent ordered to pay his or her share of the obligation to the custodial parent as child support. Since the father’s income is 84.9% of the combined income ($149,081 — $175,553) his share of the total is $21,055. ($24,800 X 84.9%.)

Combined income above $80,000/year

The court has greater flexibility as to combine income above $80,000. The court may, according to Domestic Relations Law § 240 (1-b) (c) (3), apply the appropriate percentage to that *884 amount, may consider the factors set forth in section 240 (1-b) (f), or both. In this case combined income above $80,000 is $95,553.
Applying the percentages would result in an additional combined child support obligation of $29,621 of which the father’s share is $25,148. Since the amount of child support indicated by application of the percentage is not manifestly too little or too much, we will stop at this point and not examine the effect of the paragraph (f) factors.

Child care expenses

Domestic Relations Law § 240 (1-b) (c) (4) continues by instructing the court to apportion reasonable child care costs between the parties if the costs are incurred as a result of the employment of the custodial parent. This is required by the statute. The mother states that because she often must work until 7:00 p.m., she has hired a full-time child care worker to care for and cook for the four children while she is at work. The cost for this is $l,200/month, or $14,400/year. This amounts to about $277/week, for payment to the child care worker of $8/hour for a 35-hour workweek.
The court finds it perfectly appropriate, given the income of the parties, and the fact that they paid $21,000/year for household help when they were together, for the mother to employ a child care worker to help her with the children. As the children all attend school for part of the day, however, I find that a child care worker employed for 20 hours a week would be more appropriate. At the same rate of approximately $8/hour, child care costs would amount to $160/week, $688/ month or $8,256/year. The father’s share of the reasonable child care obligation (84.9%) is $7,009. If the mother feels she needs additional child care or household help, it will be at her sole cost and expense.

Medical expenses

Domestic Relations Law § 240 (1-b) (c) (5) next directs the court to prorate each parent’s share of the children’s future reasonable health care expenses that are not covered by insurance. This is required. Although no specific amount has been requested, the father would ordinarily be required to pay 84.9% of all reasonable and necessary medical and dental expenses for the children.

Education and additional child care expenses

Domestic Relations Law § 240 (1-b) (c) (6) and (7) authorize *885 the court to consider additional child care and educational expenses for the children. These are not applicable at this time. All the children are attending public school.
Domestic Relations Law §240 (1-b) (f) directs the court to calculate the child support obligation, including child care, medical and education expenses, and the noncustodial parent’s pro rata share of the obligation. To summarize the calculations so far, the basic child support obligation is:
Father’s pro rata share (84.9%) of obligation for combined income under $80,000: $21,055
Father’s pro rata share (84.9%) of the obligation for combined income in excess of $80,000: 25,148
Father’s pro rata share (84.9%) of reasonable child care expenses: 7,009
Father’s pro rata share (84.9%) of reasonable health care costs: unknown
$53,212
Unless the court finds that this amount is unjust or inappropriate, based upon consideration of certain enumerated factors (for variation), the court is directed to order the noncustodial parent to pay his or her pro rata share of the obligation as child support. Although the statute does not require a complete exposition on pendente lite orders, I will take this opportunity to discuss (certain) factor(s).
Factor (3) addresses the standard of living the children would have enjoyed had the marriage or household not been dissolved. While a look at the preseparation standard of living may be appropriate here, given the short time the family has been apart, this is not a requirement. Domestic Relations Law § 236 (B) (6), the provision for spousal maintenance, directs the court to make an award of maintenance "having regard for the standard of living of the parties established during the marriage”. (Emphasis added.) Domestic Relations Law § 240 (1-a) (f) (3) — and its predecessor since 1979, Domestic Relations Law § 236 (B) (7) — require that the court examine "the standard of living the child would have enjoyed had the marriage or household not been dissolved.” (Emphasis added.) The two concepts are quite different. Domestic Relations Law § 236 (B) (7) allows the court to look at the standard of living in both households at any time to see that the children are being provided for in such a way as to participate, as much as *886 possible, in the standard of living they would he enjoying if the family were still together.
I recognize that a family cannot live in two households for the price of one. Generally it will be necessary for both households to economize. However, where there is more than subsistence income, and the wife has added $28,600 to the financial pot, the children should be able to maintain a standard of living consistent with that enjoyed before the separation. In any event, they should not have to live at a standard that is significantly lower than that enjoyed by the noncustodial parent.
While this family was together, the children lived in an apartment on Central Park West valued at more than a million dollars. The monthly cost for mortgage and maintenance alone was more than $4,000/month ($51,900/year). They attended private school, and at least one child was to continue to do so. The family spent almost $21,000 a year on household help and $14,000 on summer activities. Now the children are in public school — a substantial saving — and the wife is earning $28,600/year. While the children may not be able to maintain the same standard of living the addition of substantial child support to their household will go a long way toward making it possible — and may even be achievable if the mother is able to increase her income.
Factor (4) directs the court to consider the tax consequences to the parties. I recognize that child support provides neither a tax deduction to the payer nor a tax liability to the receiver. Given the disparity in incomes of the parties, however, this only serves to keep the prorating of the obligation less regressive (I will explore this more when discussing the seventh factor). When property is distributed at the time of final dissolution, a more precise exploration can be made of tax consequences of various payments.
Factor (7) allows the court to lower the child support amount when the noncustodial parent’s income is substantially lower than the income of the custodial parent or to raise the amount where, as here, the noncustodial parent’s income is substantially higher than the income of the custodial parent.
The court is frequently struck by the large gap that often exists between the incomes of the parties that come before it. Here, we have a father who has income that is 5V2 times what the mother is earning. Yet, we are asked to prorate the child *887 support obligation as if a dollar meant exactly the same to each person. This, of course, is not true. When amounts are prorated in accordance with income, the person with the lesser income will always bear a heavier burden because that person has fewer disposable dollars from which the amount can be drawn. This is so because prorating is a regressive way to distribute the obligation, a fact that shows up glaringly when as in this case there is great disparity of income. To ease this burden, I will order the father to pay 100% rather than 84.9% of the reasonable and necessary medical and dental expenses attributable to the children.

Child support order

In conclusion, the father is ordered to pay the following to
the mother for pendente lite child support:
84.9% of the child support obligation based on combined income under $80,000: $21,055
84.9% of the child support obligation based on combined income over $80,000: 25,148
84.9% of child care expenses for 20 hours a week: 7,009
100% of the children’s reasonable and necessary medical and dental care unknown
$53,212

. Laws of 1989 (ch 567), effective September 15,1989.

. For years beginning after 1989 rates increased to 7.65% on income up to $50,400.